J-S07039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.C.J.P., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: Q.P., Mother | : | No. 1475 MDA 2016 |

Appeal from the Order entered August 16, 2016
in the Court of Common Pleas of Dauphin County,
Orphans' Court at  No(s): 104 AD 2015/CP-22-DP-314-2008

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.P., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: Q.P., Mother | : | No. 1476 MDA 2016 |

Appeal from the Order entered August 16, 2016
in the Court of Common Pleas of Dauphin County,
Orphans' Court at  No(s): 105 AD 2015/CP-22-DP-67-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.P., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: Q.P., Mother | : | No. 1477 MDA 2016 |

Appeal from the Order entered August 16, 2016
in the Court of Common Pleas of Dauphin County,
Orphans' Court at  No(s): 106 AD 2015, CP-22-DP-68-2013

J-S07039-17

IN THE INTEREST OF: A.W.P., a Minor   :      IN THE SUPERIOR COURT OF
:            PENNSYLVANIA
:
:
:
:
:
APPEAL OF: Q.P., Mother         :         No. 1478 MDA 2016

Appeal from the Order entered August 16, 2016
in the Court of Common Pleas of Dauphin County,
Orphans' Court at  No(s): 107 AD 2015/CP-22-DP-90-2015

BEFORE:  BOWES, LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:         **FILED MARCH 13, 2017**

In these consolidated appeals, Q.P. ("Mother") appeals from the Orders terminating her parental rights to A.C.J.P. (born in 2008), A.J.P. (born in 2010), A.M.P. (born in 2012), and A.W.P. (born in 2014) (collectively "the Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b),[1] and changing their permanency goals to adoption.  We affirm.

The three older Children, A.C.J.P., A.J.P., and A.M.P., came into the care of Dauphin County Social Services for Children and Youth ("DCSSCY" or the "Agency") in September 2013.  The youngest child, A.W.P., was placed in Agency care and custody in April 2015.  On December 21, 2015, DCSSCY filed Petitions (collectively, "the ITPR Petitions") to involuntarily terminate

---

[1] In separate Decrees entered on August 16, 2016, the trial court also terminated the parental rights of the unknown father of A.C.J.P.; the biological father of A.J.P., N.M.; and the biological father of A.M.P. and A.W.P., M.T.  None of these fathers filed an appeal, nor are they parties to the instant appeal.

- 2 -

Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The trial court held an evidentiary hearing (hereinafter "the termination hearing") on the ITPR Petitions on August 16, 2016.

The trial court set forth in its Opinion the relevant evidence adduced at the termination hearing. ***See*** Trial Court Opinion, 10/13/16, at 1-5. We adopt the trial court's recitation as though fully set forth herein. ***See id.***

On August 16, 2016, the trial court entered the Orders involuntarily terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Mother filed separate, timely Notices of Appeal from the Orders, along with Concise Statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, this Court, *sua sponte*, consolidated the appeals.

On appeal, Mother presents the following issues for our review:

1. Whether the trial court abused its discretion when it involuntarily terminated Mother's parental rights?

2. Whether the trial court abused its discretion when it determined to change the [Children's] goal from reunification to adoption?

Mother's Brief at 15 (capitalization omitted; issues renumbered for ease of disposition).

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

appellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. … [O]ur standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, [] 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; [*In re*] *R.I.S.*, 36 A.3d [567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, [] 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [] 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As [the Supreme Court] discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead[,] we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[T]he standard of clear and convincing evidence is defined as testimony that is so

clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

This Court may affirm a trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with a consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In the instant case, we will focus on section 2511(a)(8) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--** The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.--** The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

The party seeking termination under section 2511(a)(8) must prove the following by clear and convincing evidence: "(1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2012) (citation omitted). "Termination under section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services." *Id.* (citation omitted).

Here, Mother argues that the Agency failed to meet the requirements of subsection 2511(a)(8) by clear and convincing evidence because "[t]he conditions that led to the [C]hildren being [placed] in care ha[ve] been remedied." Mother's Brief at 30. Specifically, Mother contends that

> [s]ince November [] 2015, eleven [] months prior to the [termination] hearing …, Mother was actively pursuing her sobriety through a series of residential drug and alcohol treatment facilities. The Agency never had an issue with Mother's parenting skills. The only issue that existed at the time [that] the [C]hildren were dependent was Mother's sobriety. It is clear from the testimony presented, that Mother had remained clean and sober since she entered into the residential treatment facility in November 2015.

*Id.* at 27 (citations to record omitted). Mother contends that "[t]he termination of [her] parental right[s] would not serve the needs and welfare of the [C]hildren, because Mother was sober and could have cared for [the C]hildren months prior to the [termination] hearing." *Id.* According to Mother, "the reason why the[] [C]hildren were dependent for thirty-five [] months was because Mother was making significant progress toward her objectives." *Id.* at 25.

The trial court set forth in its Opinion its reasons for determining that the Agency presented clear and convincing evidence that termination of Mother's parental rights was proper under section 2511(a)(8). *See* Trial Court Opinion, 10/13/16, at 9-10; *see also id.* at 6 (stating that "the [three] oldest [C]hildren have endured a lack of permanency for nearly three years and [A.W.P.], for most of his life. Continued placement would render the [C]hildren's chance for safety, permanency and well-being secondary to Mother's challenge in remaining drug free."); *see also id.* at 1-5 (setting forth the evidence adduced at the termination hearing). The record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. *See In re Adoption of S.P.*, 47 A.3d at 826-27. Accordingly, we adopt the trial court's recitation as though fully stated herein. *See* Trial Court Opinion, 10/13/16, at 6, 9-10.

Next, we must determine whether the termination of Mother's parental rights was in the Children's best interests under section 2511(b). *See In re*

***B.L.W.***, ***supra***. We have explained that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). ***See In re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], th[e] [Pennsylvania Supreme] Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. ***In re Z.P.***, 994 A.2d at 1121; ***see also In re K.Z.S.***, 946 A.2d 753, 762 (Pa. Super. 2008) (stating that although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child."). There is no bond worth preserving between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated.

*In re K.Z.S.*, 946 A.2d at 764.  Finally, it is appropriate to consider a child's bond with his or her foster parent(s).  *See In re T.S.M.*, 71 A.3d at 268.

"[A] parent's basic constitutional right to the custody and rearing of … her child is converted, upon the failure to fulfill … her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment."  *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).  "[W]e will not toll the well-being and permanency of [a child] indefinitely."  *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

Here, Mother contends that "[t]he termination of [her] parental right[s] would not best serve the needs and welfare of the [C]hildren, because Mother was sober and could have cared for [the] [C]hildren months prior to the [termination] hearing."  Mother's Brief at 27.[2]

In its Opinion, the trial court stated its reasons for determining that the Agency presented clear and convincing evidence that termination of Mother's parental rights was in the Children's best interests under section 2511(b).  *See* Trial Court Opinion, 10/13/16, at 11-12.  We agree with the

_____

[2] Aside from this sole reference to the Children's best interests, and to boilerplate case law concerning section 2511(b), *see* Mother's Brief at 30-31, Mother does not otherwise develop any argument as to section 2511(b). At the termination hearing, Mother testified that her visits with the Children went well, and that the Children became upset when the visits ended.  N.T., 8/16/16, at 76.

trial court's analysis and determination, which is supported by the record, and thus incorporate it as though fully set forth herein. ***See id.***

We additionally note the following. The Children's respective foster parents are adoptive resources. The Agency caseworker, Valerie Broody ("Broody"), testified concerning these placements at the termination hearing as follows:

> Starting with [A.C.J.P.], she has done very well with her current foster parent, Miss K[.] [A.C.J.P.] is receiving treatment. [The Agency is] starting to get [A.C.J.P.] more treatment for the issues she's presented. She definitely has a bond with Miss K[.] [A.C.J.P.] is able to talk about her feelings, and she's rather articulate for eight [years-old].

> [A.J.P. and A.M.P.] are with Miss E[.]R[.] They have essentially been with her since September of 2013. They do appear to be bonded [to Miss E.R.] They look to her when they … need anything. … I've observed them in [Miss E.R.'s] home. They definitely feel at home with Miss E[.]R[.]

> A.W.P. is with Miss H[.]G[.], and she has done wonders with him. He has many medical issues. He's been diagnosed with rickets. He has a feeding tube through his nose. Until recently[,] he had very poor muscle tone, and it's only been with[in] maybe the last three or four months that he's been really sitting up and making efforts to work on his gross motor skills. He's finally started speaking. He was very delayed for a long time.

N.T., 8/16/16, at 56-57; ***see also id.*** at 57 (wherein Broody stated that all of the above-mentioned pre-adoptive foster parents meet the Children's emotional, physical and mental needs).

Accordingly, we conclude that the trial court properly determined that termination of Mother's parental rights was in the Children's best interests

- 10 -

under section 2511(b). *See* Trial Court Opinion, 10/13/16, at 11-12; *see also In re K.Z.S.*, 946 A.2d at 763-64 (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would have been contrary to the child's best interests, and any bond with the mother would have been fairly attenuated when the child was separated from her, almost constantly, for four years). As we discern no abuse of the trial court's discretion in terminating Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(8) and (b), her first issue lacks merit.

In her second issue, Mother asserts that the trial court abused its discretion when it changed the Children's permanency goal to adoption. *See* Mother's Brief at 21-26. Mother argues that (1) the Agency did not put in place reasonable measures to reunify her with the Children; (2) Mother was not required to take parenting classes; (3) Mother's visits with the Children "were going extremely well"; and (4) the trial court improperly focused on Mother's prior failures in achieving sobriety, yet did not consider her current sobriety. *Id.* at 24-25.

> When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the trial court's findings of fact that have support in the record. … When the trial court's findings are supported by

competent evidence of record, we will affirm even if the record could also support the opposite result.

***In re N.C.***, 909 A.2d 818, 822-23 (Pa. Super. 2006) (citations and quotation marks omitted).

> Placement of and custody issues pertaining to dependent children are controlled by the Juvenile Act 42 Pa.C.S.[A.] §§ 6301-65, which was amended in 1998 to conform to the federal Adoption and Safe Families Act []. The policy underlying these statutes is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment.

***In re A.B.***, 19 A.3d 1084, 1088 (Pa. Super. 2011) (citation and brackets omitted). As to change of goal proceedings, "the best interests of the child and not the interests of the parent must guide the trial court, and the burden is on the child welfare agency involved to prove that a change in goal would be in the child's best interest." ***In re R.I.S.***, 36 A.3d at 573 (citations omitted). The safety, permanency, and well-being of the child must take precedence over all other considerations. ***In the Matter of S.B.***, 943 A.2d 973, 978 (Pa. Super. 2008).

Upon review of the record and the transcript of the termination hearing, we conclude that there is ample support in the record for the trial court's decision to change the Children's permanency goals to adoption. Having already determined that it is in the Children's best interests to terminate Mother's parental rights, we also agree that it is in the Children's best interests to change their permanency goals to adoption, where the Children are bonded with their pre-adoptive foster parents.

Based upon the foregoing, the trial court did not err in granting the ITPR Petitions and changing Children's permanency goal to adoption.

Orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/2017

IN THE INTEREST OF        : IN THE COURT OF COMMON PLEAS
                             : DAUPHIN COUNTY, PENNSYLVANIA
                             :
                             :

A.C.J.P.,                        : NOS. 104- AD-2015/ CP-22-DP-314-2008
(A.J.P.),                      : NOS. (105)-AD-2015/ CP-22-DP-67-2013
A.M.P.,                       : NOS. 106-AD-2015/ CP-22-DP-68-2013
A.C.J.P.                      : NOS. 107-AD-2015/CP-90-2015

## TRIAL COURT OPINION

This appeal follows the Order filed August 18, 2016 which granted the goal change to adoption and involuntary termination of parental rights of Q█████ P████ ("Mother") to the minor children A████ C█████ J████ P████ ("A.C.J.P."), born January ██, 2008, A████ J███ P████ ("A.J.P."), born December ██, 2010, A███ M██ P████ ("A.M.P."), born February ██ 2012, and A████ W███ P████ ("A.W.P.") born December █ 2014.[1]

The Agency filed the Petition for Goal Change to Adoption and Involuntary Termination of Parental Rights on December 21, 2015. On August 16, 2016, we conducted a hearing upon the Petition. At the conclusion of the hearing, we set forth on the record our findings, conclusions and holdings. See, Transcript of Proceedings, Termination of Parental Rights, August 16, 2016, pp. 82-88)(hereinafter "N.T."). We supplement those statements with this Trial Court Opinion.

## FACTS

Dauphin County Children and Youth service ("Agency") caseworker Valerie Broody has served as caseworker since September 2013 when the 3 oldest children, A.C.J.P, A.M.P. and

---

[1] The Court also terminated the parental rights of the unknown father of A.C.J.P., of N███ M██, father of A.J.P., and of M████ T█████, father of A.M.P. and A.W.P.. The fathers received proper notice and failed to appear for the hearing.(N.T. pp. 5-21). No appeals have been taken from those decrees.

1

COPY Original filed in

A.J.P. first came into care. At that time, the Agency received a referral that Mother appeared to be driving while under the influence of drugs with the children in the car. (N.T. p. 35). The referral also indicated that Mother, A.C.J.P, A.M.P. and A.J.P. were homeless. (*Id.*). [2]

A Court ordered Family Service Plan set forth the following objectives for Mother:

1. Cooperate and comply with the Agency;

2. Attend al Court hearings, Agency meetings and treatment plan meetings;

3. Sign all releases of information as requested;

4. Notify the Agency within 24 hours of new residence or contact information;

5. Address any drug and alcohol issues;

6. Obtain a drug and alcohol evaluation;

7. Submit to random urine screens as required by the Agency;

8. Follow all recommendations of the drug and alcohol evaluation;

9. Order and maintain appropriate housing;

10. Obtain a stable and legal source of income and provide documentation to the Agency;

11. Successfully complete reunification services and maintain contact with the children;

12. Attend and actively participate in all scheduled visits with the children.

(Petition for Goal Change to Adoption and Involuntary Termination of Parental Rights, December 21, 2015, para. pp.- xii; Hearing Exhibit 8).

In November 2013, Mother participated in a treatment program with T.W. Pontessa & Associates Counseling Service. (N.T. p. 39). A.C.J.P, A.M.P. and A.J.P. were returned to Mother's care for a period of time.

In September 2014, while pregnant with A.W.P., Mother began residing in Lourdes House, a home for expectant mothers and children up to the age of 6 months. (N.T. pp. 39-40). During her

---

[2] As set forth herein, Mother's fourth child, A.W.P. came into care in April, 2015. (N.T. pp. 23-24).

2

residence, Mother provided frequent urine screens as required. (N.T. p. 42). Mother did well while in the residential program. (N.T. p. 50). In February 2015, upon discharge from Lourdes House, the Agency assisted Mother with a move to a house. The Agency paid the security deposit and the first 2 months of rent on Mother's behalf. (N.T. p. 52). The Agency explained to Mother that it would not provide further financial assistance with rent. (N.T. p. 62).

From September 2013 through September 2014, Mother failed to consistently provide urine screens as required or maintain appropriate housing. (N.T. pp. 40-41).

From the time of her discharge from Lourdes House through April 2015, Mother was not enrolled in any drug and alcohol treatment program. She provided negative drug screens for a short period following discharge from Lourdes House. (N.T. p. 42).

However, on April 17, 2015, the Agency received a referral that Mother was unresponsive behind the wheel and appeared to be under the influence of drugs, with the children in the vehicle. (N.T. pp. 35-36; N.T. p. 43). Mother's fourth child, A.W.P., came into care following the April 2015 incident. (N.T. pp. 23-24).

In June 2015, Mother returned to T.W. Pontessa for drug treatment but was discharged for non-attendance. (N.T. p. 45). Mother received criminal charges related to the April 17, 2015 incident. Mother was incarcerated from July 14, 2015 to August 21, 2015. (N.T. pp. 53-54). Mother was evicted from her housing in July 2015. (N.T. p. 43; p. 53).

In September 2015, the Agency referred Mother to Gaudenzia Addiction Treatment and Recovery Services. The Agency attempted to pick up Mother to take her to an intake appointment there, but Mother was not present at the address she provided. (N.T. p. 46). Mother initiated treatment with Gaudenzia on her own in October 2015, first as an outpatient then as an inpatient. (N.T. pp. 45-46).

3

During the period of April 2015 through November 2015, Mother provided 5 urine screens, 2 of which tested positive for PCP, the substance abuse which initiated the Agency's involvement. (N.T. 44). In November 2015 and December 2015, Mother resided in Vantage House, a residential treatment facility. (N.T. p. 47; p. 63). Vantage House would have allowed only 2 of the children to reside there with Mother. (N.T. p. 67).

Since November 2015, Mother has failed to provide regular urine screens as required. (N.T. p. 44).

During the second period during which A.C.J.P, A.M.P. and A.J.P. came into the care of the Agency, Mother failed to maintain regular contact with them. (N.T. p. 48). Based upon Mother's failure to maintain substantial and continuing contact, on October 6, 2015, the Court made the finding of aggravated circumstances as to A.C.J.P, A.M.P. and A.J.P. (N.T. p. 49; Exhibit 13, Exhibit Packet p. 389).

Mother has not maintained consistent employment and would be unable to financially support the children. (N.T. p. 66).

Adoptive resources exist for all of the children. (N.T. p. 55). A.C.J.P., now age 8, receives treatment for anxiety related to the lack of permanency. (N.T. pp. 65-66). A.C.J.P. has bonded with her foster parent and is progressing well in her foster home. (N.T. p. 56).

A.J.P. and A.M.P. reside together with a different foster parent, with whom they have bonded well. (N.T. p. 56). A.J.P. receives services to address behavioral problems in school. (N.T. pp. 65-66). Agency caseworker Ms. Broody has observed A.J.P. and A.M.P. in the foster home and finds that they appear comfortable. The children look to their foster parent to meet their needs. (N.T. p. 56).

4

A.W.P., approximately 18 months old at the time of the August 2016 hearing, faces medical challenges which require that he receive feeding through a tube. He has been diagnosed with rickets. (N.T. p. 56). His gross motor skills and language are significantly delayed although he has begun to show marked progress. (N.T. p. 57). His foster parent ensures that he receives the regular medical care he requires. (*Id.*).

All of the foster homes meet the emotional, physical and mental needs of the children. (*Id.*)

Mother testified that since April 2015, she has gained an understanding of her addiction and has progressed with recovery. (N.T. p. 73). Mother testified that she was scheduled for a job interview following the hearing date and an opportunity for housing. (N.T. pp. 73-74).

From the time of her release from incarceration in August 2015 through the date of the hearing, Mother has resided with various friends. (N.T. p. 54).

As of the time of the hearing, A.C.J.P, A.M.P. and A.J.P. were in care nearly 3 years and A.W.P. for 17 months. (N.T. p. 47).


DISCUSSION

A. The Trial Court properly exercised its discretion in determining that a change of the permanency goal from reunification to adoption serves the best interest of the children.

In a goal change proceeding, "the best interest of the child, and not the interest of the parent, must guide the trial court, and the parent's rights are secondary. The burden is on the Agency to prove the goal change would be in the child's best interest." *In the Interest of D.P.*, 972 A.2d 1221, 1227 (Pa. Super. 2009), *appeal denied*, 601 A.2d 702 (Pa. 2009). In *In re N.C.*, the Superior Court stated,

5

Placement of and custody issues pertaining to dependent children are controlled by the Juvenile Act, [42 Pa.C.S.A. §§6301-6365] which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("AFSA")[42 U.S.C. § 671 et seq.] The policy underlying these statutes is to prevent children from languishing indefinitely in foster care, with inherent lack of permanency, normalcy, and long-term parental commitment. Consistent with this underlying policy, the 1998 amendments to the Juvenile Act, as required by AFSA, place the focus of dependency proceedings, including goal change proceedings, on the child. Safety, permanency, and well-being of the child must take precedence over all other considerations, including the rights of the parents.

909 A.2d 818, 823 (Pa.Super. 2006)(citations and footnotes omitted)(emphasis added).

Here, the oldest children have endured a lack of permanency for nearly three years and the youngest child, for most of his life. Continued placement would render the children's chance for safety, permanency and well-being secondary to Mother's challenge in remaining drug free. Accordingly, we properly granted the goal change to adoption.

B. The Trial Court properly found that the Agency met its burden of proving that statutory grounds existed for and the children's best interests required termination of Mother's parental rights .

The standard of review governing the trial court's termination of parental rights is well settled. Namely,

> When reviewing an appeal from a decree terminating parental rights, [the Superior Court] is limited to determining whether the decision of the trial court is supported by competent evidence. *See In re K.C.W.*, 456 Pa. Super.1, 689 A.2d 294, 298 (1997). Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. *Id.* Where a trial court has granted a petition to involuntarily terminate parental rights, [the Superior Court] must accord the hearing judge's decision the same weight we would give to a jury verdict. *See In re Child M.*, 452 Pa. Super. 230, 681 A.2d 793, 800 (1996). We must employ a broad comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. *See In re Matsock*, 416 Pa.Super. 520, 611 A.2d 737, 742 (1992). *In re C. S.* 761 A.2d 1197, 1199 (Pa. Super. 2000).

6

The Agency, as the party seeking termination, bears the burden of establishing by clear and convincing evidence that grounds exist for termination of parental rights. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). The standard of clear and convincing evidence means "testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Matter of Sylvester*, 555 A.2d 1202, 1203-1204 (Pa. 1989). We found that the Agency met its burden of proof and that termination of Mother's parental rights was proper.

The record establishes by clear and convincing evidence that for an unreasonable time, Mother failed to remedy the conditions which led to placement although services and opportunities to do so were made readily available to her. The Agency sought termination of Mother's parental rights based upon the Adoption Act, 23 Pa.C.S. §2511(a)( 1 ), (2), (5) and (8) , which provide:

(1)     The parent by conduct continuing for a period of at least six months  immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)     The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(5)     The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent

7

cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(1), (2), (5) and (8).

In considering whether the party seeking termination has satisfied these provisions, the Appellate Court keeps in mind that a parent has an affirmative duty to work towards the return of his or her children. *In re Adoption of J.J.,* 511 Pa. 590, 602, 515 A.2d 883, 889 (Pa. Super. 1986). At a minimum, that "affirmative duty requires that the parent show a willingness to cooperate with CYS to obtain the rehabilitative services necessary to enable the parent to meet the duties and obligations inherent in parenthood." *Id.* In a termination proceeding, the trial court must consider all the circumstances in determining whether a parent has fulfilled his obligations; the court must further measure the parent's performance in light of what would be expected of any individual under similar circumstances. *Matter of M.L.W.,* 307 Pa. 29, 33-34, 452 A.2d 1021, 1023-24 (1982) *(citations omitted).* Further, the Appellate Court need only agree with the trial court's decision as to any one subsection in order to affirm the termination of

8

parental rights. *In re J.E.* 745 A.2d 1250 (Pa. Super. 2000). See also, *In re J.I.R.*, 808 A.2d 934, 940 n.6 (Pa. Super. 2002). The Superior Court has explained:

> The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit and have her parental rights terminated. There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> \*\*\*
>
> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa.Super. 2008).

Clear and convincing evidence established grounds for termination under 23 Pa.C.S.A. §(a)(8). The record includes ample evidence that the conditions which led to the removal of the children in April 2015 still exist. Mother's ongoing struggle to remain sober outside of an inpatient setting has rendered her unable to maintain a stable home and employment.

Mother asserts that the Trial Court erred in terminating Mother's parental rights where she completed some aspects of the Family Service Plan. While the record reflects that she made some progress in accomplishing the goals of the Family Service Plan,

> [a]s [the Superior Court] Court has repeatedly indicated, termination under subsection 2511 (a)(8) does not require an evaluation of the parents' willingness or ability to remedy

9

the conditions which led to placement of the [child]. Instead, as we recently reaffirmed in an *en banc* decision, subsection (a)(8) 'requires only that the conditions continue to exist, not an evaluation of parental willingness or ability to remedy them'.

*In re I.J.*, 972 A.2d 5, 11 (2009) (*internal citations omitted*).

Although Mother demonstrated progress while undergoing in-house drug treatment, she repeatedly relapsed when she returned to an unsupervised setting. We are constrained to find that in spite of her attempts, Mother's inability to independently maintain sobriety has deprived the children of stability. Our Appellate Court has stated,

> We recognize that the application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parental responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law which contemplates only a short period of time, to wit eighteen months, in which to *complete* the process of either reunification or adoption for a child who has been placed in foster care.

*Id.*, at 13. See also, *In re S.H.*, 879 A.2d 802, 809 (Pa.Super. 2005)(termination under 2511 (a)(8) was appropriate where reunification could not be contemplated based upon the need to evaluate Mother's ability to maintain sobriety in the outside community for a year or two).

Although we based our termination decision upon 23 Pa.C.S.A. §§ (a)(8), we also found that clear and convincing evidence established grounds for termination under 23 Pa.C.S.A. §§ (a)(1),(2) and(5).

We further found that clear and convincing evidence established that the children's best interests are served by terminating Mother's parental rights.

Pursuant to Section 2511(b), a court must give 'primary consideration to the [developmental, physical and emotional] needs and welfare of the child." *In re J. E.*, 745 A.2d 1250, 1254-55 (Pa. Super. 2000) (*citations omitted.*) The statute provides,

10

Other considerations. - The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6), or (8), the court shall not consider any efforts by the parent to remedy the condition described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

In addition, the Superior Court has stated that while "Section 2511(b) does not explicitly require a bonding analysis, [case law provides that] analysis of the emotional bond, if any, between a parent and a child is a factor to be considered in determining the developmental, physical and emotional needs and welfare of the child under §2511(b)." *In the Matter of K.K.R.-S., K.M.R., K.A.R.,* 958 A.2d 529, 533 (Pa. Super. 2008). The Superior Court has explained,

Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent child bond, paying close attention to the effect of permanently severing the bond.

*In re C.P.,* 901 A.2d 516, 520 (Pa. Super. 2006).

We do not question that Mother loves her children. However, Mother presented no evidence upon which we may find that a bond exists which, if broken will cause detriment to the children. Mother testified only that she can enjoy playing with the children now that she is not concerned about getting high and that parting from them is difficult. (N.T. p. 76).

In contrast, we find that the children have bonded with their foster parents and that their best interests are well served in their foster homes. There, they receive the consistent devoted

11

emotional and physical care they require. We will not disrupt the permanency and stability they have found in their foster homes. To do so would be detrimental to the childen.

CONCLUSION

For all of the foregoing reasons the Decree should be affirmed.

BY THE COURT:

_____
JOHN F. CHERRY, JUDGE

October _____, 2016

Distribution:

Damian J. DeStefano, Esq., 3800 Market Street, Suite 205, Camp Hill, PA 17011

Owen Hoover, Esq., 101 North Sixth Street, Harrisburg, PA 17102

Joy W. Fleming, Esq., 91 Sylvan Ridge Road, Oberlin, PA 17113